IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RONALD VIVOD, and<br>STELLA VIVOD,<br><br>                Plaintiffs,<br><br>vs.<br><br>HOWMEDICA OSTEONICS CORP.,<br>STRYKER CORPORATION,<br>STRYKER SALES<br>CORPORATION, and<br>SOUTHWESTERN ILLINOIS<br>HEALTH FACILITIES, INC.,<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 15-cv-1207-MJR-SCW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

In September 2007, a doctor at Southwestern Illinois Health Facilities in Maryville, Illinois, performed a hip replacement on Ronald Vivod, purportedly using implant parts made by Howmedica, Stryker Corporation, or Stryker Sales Corporation. Some parts of the implant allegedly failed on March 20, 2014, leading to a revision hip arthroplasty at Barnes-Jewish Hospital shortly thereafter. In September 2015, Ronald and his wife Stella Vivod brought suit in Illinois circuit court, alleging state law claims against Howmedica, the Stryker entities, and Southwestern Illinois Health Facilities concerning Ronald's failed implant. Howmedica and the Stryker entities removed the case to this Court on October 30, 2015, claiming that Southwestern Illinois—the lone defendant that was not diverse—was fraudulently joined as a party, meaning that the Court still had the power to hear the case under the diversity and removal statutes. In

1

light of the joinder argument, the Court directed the Vivods to file a memorandum addressing joinder by late November 2015. The Vivods did not respond to the Court's order and instead filed a notice of voluntary dismissal of Southwestern Illinois in mid-December 2015. The propriety of removal and the impact of the Vivods' post-removal dismissal on the removal analysis are both before the Court for review.

The Vivods have attempted to dismiss the hospital from the case after removal, but misjoinder was the lynchpin of removal to federal court, and the requirements of removal must be satisfied or excused for the case to remain here. There are two groups of prerequisites for removal, the first jurisdictional (in the subject matter sense) and the second statutory. ***Western Securities Co. v. Derwinski*, 937 F.2d 1276, 1278-79 (7th Cir. 1991).** The jurisdictional requirements—that the action is between diverse parties and that the action seeks damages in excess of $75,000—are typically assessed by looking at the state of things at the time the case comes to federal court, but there's an exception to that rule for post-filing dismissals of parties—those can "cur[e] a jurisdictional defect" in a case. ***Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 572 (2004).** So even if the Vivods' complaint was not subject to removal at the outset given the presence of Southwestern Illinois, the Vivods' post-removal dismissal of the hospital fixes the jurisdictional problem, meaning that the Court has the basic power to hear the case.

There are other requirements for removal beyond the jurisdictional ones, though. Those are put forth in the procedural removal statute, and include the requirement that the case be fit for federal adjudication at the time the removal petition was filed. *See* **28 U.S.C. § 1441(a).** ***Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 574 (2004)**,

and *Caterpillar Inc. v. Lewis*, **519 U.S. 61, 73-74 (1996)**, teach that this adjudication requirement and the rest of the statutory requirements for removal do not impact the Court's subject matter jurisdiction. Most of those procedural requirements can be waived, then, typically by a plaintiff's failure to seek remand shortly after removal. *Western Securities Company*, **937 F.2d at 1279.** It makes conceptual sense that the "fit for adjudication" requirement in § 1441, being statutory and not jurisdictional, would also be subject to waiver, but that requirement seems to be made of tougher stuff. It can only be set aside, the cases suggest, if the interests of finality, efficiency, and judicial economy demand it, as would be the situation when the defect is noticed after judgment or close to it, or at the least after the federal court has expended significant resources in administering the case. *E.g., Rodas v. Sidling*, **656 F.3d 610, 629-30 (7th Cir. 2011);** *City of Joliet v. New West, L.P.*, **562 F.3d 830, 833 (7th Cir. 2009).** This case is in its infancy; finality or efficiency can't justify ignoring the statutory problem.

So the Vivods' post-removal dismissal doesn't cure the statutory removal defect, meaning that it must be fixed through another path if at all. One possibility—and the one advanced by the defendants—is that the hospital shouldn't have been named as a defendant in the first place because any claim against it is bunk. That's the doctrine of fraudulent joinder: it permits federal courts to dismiss non-diverse parties to whom no viable state claim could lie and keep the case in federal court, the presumption being that the non-diverse party was sued by the plaintiff only to avoid removal. *Walton v. Bayer Corp.*, **643 F.3d 994, 999 (7th Cir. 2011).** The doctrine puts the federal court to the paces of determining whether any state claim against the non-diverse defendant has a

3

chance of success; if it does, the case must be remanded; if it doesn't, the case can remain in federal court. *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 765 (7th Cir. 2015).

The non-hospital defendants maintain that the Illinois statute of repose for claims against healthcare providers has long run, so the claim against the hospital was dead from the start (and thus fraudulently joined to the suit). While limitations issues typically aren't addressed at the outset of the case, they can be dealt with at an early phase when the complaint's allegations reveal enough to show that an action is untimely. *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008). That logic extends to fraudulent joinder—if the limitations problem is clear from the face of the complaint, a limitations problem is proper grist for a fraudulent joinder dismissal. *LeBlang Motors, Ltd. v. Subaru of Am., Inc.*, 148 F.3d 680, 691 (7th Cir. 1998).

The Illinois healthcare statute of repose[1] provides for a four year deadline to bring a health-related case against a hospital—no action for damages can "be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action." 735 ILL. COMP. STAT. 5/13-212. The Illinois healthcare repose provision is different from the healthcare limitations provision: unlike the limitations provision, the repose period doesn't start when the plaintiff discovers the harm, but instead is triggered by the occurrence of the act that caused the injury. *Orlak v. Loyola Univ. Health Sys.*, 885 N.E.2d 999, 1003 (Ill. 2007). While that may seem like harsh

---

[1] Because the defendants cite Illinois law, because the Vivods link some of their claims to Illinois law, and because the Vivods have offered no objection to the application of Illinois law to their claims against the hospital, the Court will apply Illinois law for the time being. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014).

medicine to plaintiffs who don't discover their injuries until after the repose period has run, the repose provision is designed to set a point after which defendants can no longer expect to be sued, thereby reducing insurance and litigation costs. *Anderson v. Wagner*, 402 N.E.2d 560, 565 (Ill. 1979). There are precious few exceptions and modifications to the repose rule: its startup can be postponed by a legal disability or a continuous course of negligent treatment, and it can be tolled when a party fraudulently conceals a claim from a person entitled to that knowledge, but those are the only ways around the rule. *Turner v. Nama*, 689 N.E.2d 303, 312-13 (Ill. App. Ct. 1997).

The Vivods claims against Southwestern sound in negligence, products liability, breach of warranty, fraud, and misrepresentation, but they all arise out of Ronald's implant surgery at Southwestern, so the healthcare provider statute of repose—and its broad reach for any "action" that "aris[es] out of patient care"—applies to all of the claims. *See* 735 ILL. COMP. STAT. 5/13-212; *see also Elke v. Zimmer, Inc.*, 596 N.E.2d 661, 661-62 (Ill. App. Ct. 1992) (product liability actions fall "within the ambit of section 13-212(a)," such that the statute of repose "applies to a hospital which [purportedly] distributes or sells a defective hip prosthesis"). Ronald's original hip replacement was implanted in September 2007, meaning that his case against Southwestern could have been filed in September 2011 at the latest, absent one of the exceptions mentioned above. There's nothing to suggest that those exceptions apply here, especially in a way that would stall the repose period for four years, and the Vivods haven't made any argument concerning any of the exceptions in response to the joinder issue. So the time to bring any action against the hospital has long expired, and the hospital must be

5

dismissed as fraudulently joined. *LeBlang Motors*, **148 F.3d at 691.** That dismissal means that the hospital shouldn't have been sued, so the "fit for adjudication" requirement in § 1441 is satisfied and the case can remain in federal court.

To sum up, Howmedica and the Stryker defendants' motion to dismiss Southwestern Illinois Health Facilities from this case (Doc. 1) on fraudulent joinder grounds is **GRANTED**, and Southwestern Illinois is **DISMISSED** without prejudice. That dismissal moots Southwestern Illinois Health Facilities' subsequent motion to dismiss (Doc. 15), so that motion is **DENIED** as **MOOT**. Having verified that the Court has subject matter jurisdiction and that the "fit for adjudication" requirement was satisfied, the Court will track the case and assign a firm trial date.

    **IT IS SO ORDERED.**

    **DATED: January 26, 2016**

/s/ **Michael J. Reagan**
**Chief Judge Michael J. Reagan**
**United States District Court**